**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **INTERTEK USA INC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 14-CV-6160** |
| | § | **Hon. Joan B. Gottschall** |
| **AMSPEC, LLC, JAMES GRACA, LISA** | § | |
| **GRACA, MELANIE MCMAHON,** | § | |
| **MATTHEW REILLY, AND MALCOLM** | § | |
| **VELLA** | § | |
| | § | |
| **Defendants.** | § | |

**INTERTEK USA, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Intertek USA, Inc. ("Intertek") submits the following Reply in Support of its

Motion for a Preliminary Injunction.

**ANALYSIS & AUTHORITIES**

In their Response, Defendants assert four main arguments: Defendants claims that (1)

Intertek likely violated certain electronic communications laws, giving Intertek "unclean hands";

(2) Intertek's employee nonsolicitation restrictive covenants are unenforceable because they lack

adequate consideration and are overbroad; (3) Intertek's breach of fiduciary duty claim fails

because the competitive actions taken by the Former Intertek Employees while employed by

Intertek were in the "preliminary stages" and thus permissible; and (4) the inevitable disclosure

doctrine is inapplicable in this case. *See* Def.'s Resp. 1-2, ECF No. 45. Defendants' claims are

without merit.

1

## I.  Intertek Did Not Violate Any State Or Federal Laws In Accessing Jim Graca's Text Messages.

Defendants allege that Intertek violated the Stored Communications Act ("SCA"), the Federal Computer Fraud and Abuse Act ("CFAA"), and Jim Graca's right to be free from an intrusion upon his seclusion.  *See* Def.'s Resp. 4, ECF No. 45.  These arguments fail.

Under any law, the Former Intertek Employees had no expectation of privacy for the iCloud accounts.  First, the iCloud accounts exist only because of the Former Intertek Employees' affiliation with Intertek.  Intertek issued the iPhones to the Former Intertek Employees, the Former Intertek Employees set up the accounts in furtherance of their use of the iPhones for work, and the Former Intertek Employees used their Intertek e-mail addresses to establish the accounts.

Further, Intertek's Employee Handbook explicitly states that employees "have *no expectation of privacy* in the use of any information transmitted by, received from or *stored in Intertek Systems*."[1]  "Intertek Systems" is defined to include servers, terminals, Internet access, software, telephone systems, and company-provided cellular phones, among other things.[2] Intertek also has the right to access and monitor the usage of Intertek Systems, specifically including content on devices loaded with Intertek's mobile device management service and connected to Intertek e-mail.[3]  When an Apple user sets up an iCloud account using an e-mail address and password, the iCloud account syncs with the device.  That is, all documents, communications, pictures, videos, and data on the device are saved on the iCloud and all files in

---

[1] *See* Exhibit 1 hereto, Employee Handbook, at 56, Electronic & Other Telephonic Communications; Information Technology Acceptable Use Policy, General Principles ¶ 9. (emphasis added).

[2] *Id*. Employee Handbook, at 56, Electronic & Other Telephonic Communications; Information Technology Acceptable Use Policy.

[3] *Id.* Information Technology Acceptable Use Policy, General Principles ¶ 7; Information Security Policy, Mobile Device Guidelines §§ 4.7–4.8; Employee Handbook, at 56, Electronic & Other Telephonic Communications.

the iCloud account are saved on the device. As a result, all of the information on the Intertek-provided iPhones exists on the iCloud accounts, and all of the information on the iCloud accounts at the time of the Former Intertek Employees' termination exists on the Intertek-issued iPhones. Intertek's explicit policies therefore grant Intertek the authorization to access this information.

Intertek also prohibits its employees from loading company data or programs on home or personal computers, or any other equipment not belonging to Intertek, and prohibits employees from registering Intertek e-mail addresses for personal use on non-business related third-party websites.[4] Intertek has the right to access the iCloud accounts and the information stored on them because the Former Intertek Employees used their Intertek e-mails as the logins and loaded Intertek information on the iCloud accounts. Intertek also prohibits its employees from using pass code, passwords, or voice mail access codes unknown to Intertek on Intertek devices, supporting Intertek's right to access the information on the iCloud accounts. The Former Intertek Employees therefore cannot manufacture a reasonable expectation of privacy by including personal information or communications on employer devices, when they know that the information was not private.[5]

A. **Intertek Did Not Violate The Stored Communications Act.**

The SCA creates a cause of action when any person "intentionally accesses ***without authorization*** a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains . . . access to a

---

[4] Ex. 1, Information Technology Acceptable Use Policy, General ¶ 2, Email ¶ 11.

[5] The Defendants misrepresent the record here with respect to the timing of Intertek's accessing the iCloud accounts. Specifically, the Defendants claim that Intertek's current computer forensics expert "warned" Intertek about accessing the accounts because of his concern that the Former Intertek Employees might have loaded non-Intertek information onto the accounts. *See* Def.'s Resp. 4, ECF No. 45 at 6-7. In truth, Intertek's computer expert was hired *after* Intertek accessed the iCloud account.

wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a) (emphasis added).  The central question in determining whether an employer is liable under the SCA is whether the access to the electronic communications was authorized.  *See Shefts v. Petrakis*, 758 F. Supp. 2d 620, 635 (C.D. Ill. 2010) (citing *Devine v. Kapasi*, 729 F. Supp. 2d 1024, 1028-29 (N.D. Ill. 2010)).

To answer this question, courts examine whether the employees had a reasonable expectation of privacy in their electronic communications.  *See id.* at 633 (noting that "a party's expectation of privacy in messages sent and received on company equipment or over a company network hinge on a variety of factors, including whether or not the company has an applicable policy on point"); *see also Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) (holding that the employer's announced policies regarding employer-owned equipment and the messages sent through such equipment "destroyed any reasonable expectation of privacy [the employee] might have had").   In this case, Intertek's written policies on the use of the Intertek-owned iPhones demonstrate that the Former Intertek Employees had no reasonable expectation of privacy for information contained on the iPhones or the iCloud storage for information on the iPhones.

Defendants' reliance on *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.* is misplaced.  962 N.E.2d 29 (Ill. App. 2d Dist. 2011).  The only question in *Borchers* was the intent of the employer in accessing the employee's e-mail, not whether that access was authorized.  *Id.* at 38, 41-42.  Instead, the scenario here is more akin to *Shefts v. Petrakis*.  758 F. Supp. 2d at 634.  In *Shefts*, the employer accessed a former employee's text messages and e-mails.  *Id.* The Central District of Illinois examined all of the employer's policies on electronic communications and determined that the employer *was authorized*, pursuant to these policies, to

4

access and monitor the former employee's communications. *Id.* at 631, 634-35. Similarly here, Intertek's handbook policies authorize Intertek to do the same, and thus Intertek's actions were not in violation of the SCA.

### B. Intertek Did Not Violate The Computer Fraud And Abuse Act.

Defendants' argument that Intertek violated the CFAA also falls short. To state a claim under the CFAA, the moving party must prove (1) damage or loss; (2) caused by; (3) a violation of one of the substantive provisions set forth in 18 U.S.C. § 1030(a); and (4) conduct involving one of the factors set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(l)-(V). *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09-C-0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009). The underling concern of the CFAA is "damage to data and . . . the statute was ***not*** meant to cover the disloyal employee who walks off with confidential information." *SBS Worldwide, Inc. v. Potts*, No. 13-C-6557, 2014 WL 499001, at *8 (N.D. Ill. Feb. 7, 2014) (emphasis added).

Defendants do not allege that any data was lost or impaired. "Damage" is defined as "the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any diminution in the completeness or usability of the data on a computer system." *Id.* (quoting *Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847, 852 (N.D. Ill. 2011)). The CFAA defines "loss" as costs related to the alleged computer impairment, such as the costs for investigating a possible CFAA violation and restoring the data, as well as any revenue lost or other cost incurred because of interruption of service. *Id.* at *9 (quoting 18 U.S.C. § 1030(e)(11)). Notably, loss does not include costs incurred in attempts to determine the scope of information accessed by another party. *Id.*

Here, the Former Intertek Employees cannot establish damage because Intertek merely accessed the information on the iCloud. No electronic files were destroyed, corrupted, or

deleted, and all of the information stored on the iCloud is still usable. *Id.* Further, the Former

Intertek Employees did not incur any loss because they had access to the information at all times.

Thus, there is no need to incur costs investigating the possible destruction, deletion, or corruption

of the information. Any costs incurred by the Former Intertek Employees would likely be in

their attempts to determine the scope of information accessed by Intertek, which does not meet

the definition of loss under the CFAA. *Id.* (finding that costs incurred in determining the scope

of the information accessed by another party to be insufficient to constitute "loss" under the

CFAA).

Because the Former Intertek Employees are unable to meet the threshold requirement of

suffering damage or loss, any claim that Intertek violated the CFAA is unavailing.

**C.      Intertek Did Not Violate Jim Graca's Right To Be Free From An
         Intrusion Upon His Seclusion.**

Intertek also did not violate Jim Graca's right to be free from an intrusion upon seclusion.

To state a claim for "intrusion upon seclusion" under Illinois common law, the moving party

must allege that (1) there was an unauthorized intrusion or prying into the moving party's

seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3)

the matter intruded on was private; and (4) the intrusion caused the moving party anguish and

suffering.[6] *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71, 813 N.E. 2d 1013, 1017 (Ill. App.

1st Dist. 2004).

As previously noted, based on Intertek's extensive policies governing electronic

communications, Intertek was authorized to access any electronic communications, and, thus,

Jim Graca had no reasonable expectation of privacy for information on his company iPhone and

---

[6] It is unsettled whether Illinois even recognizes the common law tort of inclusion upon seclusion. *See Acosta v. Scott Labor, LLC*, 377 F. Supp. 2d 647, 649 (N.D. Ill. 2005). Even if Illinois does recognize this tort, however, Defendants are unable to prove it as explained herein.

associated iCloud. *See Shefts*, 758 F. Supp. 2d at 633; *see also Muick*, 280 F.3d at 743 (the employer's policy regarding employer-owned equipment and the messages sent on such equipment "destroyed any reasonable expectation of privacy [the employee] might have had"). Moreover, other courts have held that even if the employee had a reasonable expectation of privacy in the contents of his messages sent through company-issued equipment, a reasonable person would not consider an employer's interception of these communications "to be a substantial and highly offensive invasion of his privacy" for purposes of the tort of intrusion upon seclusion. *Smyth v. Pillsbury Co.*, 914 F. Supp. 97, 101 (E.D. Pa. 1996) (rejecting the argument that the employer's interception of messages sent through the company system was sufficiently offensive to constitute an intrusion on seclusion).

The matter intruded upon must also be "private." Private facts are generally comprised of information concerning "a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate personal nature." *Acosta v. Scott Labor, LLC*, 377 F. Supp. 2d 647, 649 (N.D. Ill. 2005). Defendants have not alleged that Intertek intruded upon any matters that were private. *See Steinbach v. Vill. of Forest Park*, No. 06-C-4215, 2009 WL 2605283, at *4 (N.D. Ill. Aug. 25, 2009) (finding that the moving party failed to allege what "inherently private facts" were accessed through her work e-mail system).

What is more, Jim Graca is unable to prove that any intrusion caused him anguish and suffering. For torts such as intrusion upon seclusion, the moving party must show "actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community." *Schmidt v. Ameritech Ill.*, 329 Ill. App. 3d 1020, 1035, 768 N.E.2d 303, 316 (Ill. App. 1st Dist. 2002). This actual injury must stem from the *intrusion* itself, not from any subsequent acts that may follow. *Id.* (finding that the moving party's pain and

suffering did not result from the intrusion but from the fact he subsequently lost his job). Jim Graca's general statement that he was "greatly disturbed" fails to establish an actual injury. *See* Def.'s Resp. 10, ECF No. 45; *see also Schmidt*, 329 Ill. App. 3d at 1035, 768 N.E.2d at 316 (addressing the tort of intrusion upon seclusion and stating that "[i]njury is not presumed"). Therefore, Defendants cannot establish that Intertek violated Jim Graca's intrusion upon seclusion.

### D. The Doctrine of Unclean Hands Is Inapplicable And Exclusion Of Any Evidence Is Unwarranted.

Defendants also request the Court to deny Intertek's motion for a preliminary injunction because of the doctrine of "unclean hands." In the alternative, Defendants ask the Court to exclude any evidence that came from Jim Graca's iCloud account. *See* Def.'s Resp. 10-12, ECF No. 45. Both requests should be rejected.

As a threshold matter, Defendants fundamentally misunderstand the nature of the doctrine of "unclean hands." The doctrine applies "when there is a ***direct nexus*** between the bad conduct and the activities sought to be enjoined." *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985) (emphasis added). Intertek's authorized access of Jim Graca's iCloud is wholly unrelated to the Defendants' theft and use of Intertek's confidential trade secret information in this case, and the Former Intertek Employees' breaches of their employment agreements and fiduciary duties to Intertek.

An argument similar to Defendants' was rejected in *Bruss Co. v. K&S Brokerage, Inc.* No. 91-C-1561, 1992 WL 25375, at *11 (N.D. Ill. Feb. 6, 1992). The former employee in *Bruss* argued that the doctrine of unclean hands should apply to the plaintiff-company which was trying to enjoin the former employee from violating a nonsolicitation agreement. *Id.* The employee asserted that the plaintiff-company was not entitled to a preliminary injunction because the

plaintiff-company "unlawfully seized" records from the employee's computer and, as a result, had unclean hands. *Id.* The court held that the doctrine of unclean hands did not bar injunctive relief because the plaintiff-company's conduct was not "sufficiently related" to the contractual obligations the company was trying to enjoin. *Id.* The same reasoning applies here: Defendants' argument as to why the doctrine of unclean hands should bar injunctive relief is not remotely related to the activities Intertek seeks to enjoin. It is a red herring, seeking only to excuse the Defendants' theft.

In the alternative, Defendants request that any evidence obtained from the iCloud account be excluded. This argument also fails. Defendants primarily rely on *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, a case involving an employer who accessed a former employee's e-mails that were *not* stored on or sent through the employer's own computers or systems. 587 F. Supp. 2d 548, 554 (S.D.N.Y. 2008). Further, the parties disputed whether the employer had a policy in place that addressed electronic communications. *Id.* at 559. The court in *Pure Power Boot Camp* emphasized that the former employee "did not store any of the communications which his former employer now seeks to use against him on the employer's computers, servers, or systems; nor were they sent from or received on the company e-mail system or computer." *Id.* at 560.

Unlike the scenario presented in *Pure Power Boot Camp*, the communications in this case were sent using an Intertek-issued Apple iPhone and stored in an iCloud account that was created using an Intertek e-mail address and that contained Intertek information. Further, there is no dispute that Intertek has several policies governing electronic communications on Intertek devices. Intertek properly and legally obtained evidence obtained from the iCloud created for its own device, and thus exclusion of this evidence is not warranted.

## II.     Intertek's Employee Nonsolicitation Restrictive Covenant Is Supported By Adequate Consideration And Is Appropriately Tailored.

In an attempt to circumvent their non-solicitation agreements, Defendants argue that the restrictive covenant lacks adequate consideration because the Former Intertek Employees were employed by Intertek for less than two years after executing the ECIA and is overly broad. *See* Def.'s Resp. 14, ECF No. 45.  Again Defendants are wrong.

### A.     Intertek's Employee Nonsolicitation Restrictive Covenant Is Supported By Adequate Consideration.

Intertek does not dispute that restrictive covenants must be supported by adequate consideration.  Nor does Intertek dispute that continued employment for a "substantial period" of time constitutes adequate consideration. *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 743 (N.D. Ill. 2011).  Defendants, however, are incorrect when they state that Illinois courts have "clearly defined a 'substantial period' as two years or more of continued employment." *See* Def.'s Resp. 15, ECF No. 45.  To the contrary, "Illinois law does not provide a clear rule" on what constitutes continued employment for a substantial period. *Id.* (rejecting the former employee's argument that a two-year bright line rule applies).  Some Illinois cases indicate that two years can be properly considered as continued employment for a substantial period, while others suggest that employment for one year is a substantial period of employment. *Id.* (collecting cases).

Here, Intertek employees regularly renew the ECIA.  Jim Graca and Melanie McMahon resigned from Intertek approximately 18 and 6 months after they renewed the ECIA, respectively.  Lisa Graca was terminated approximately 17 months after she renewed the ECIA. These periods of time constitute continued employment for a "substantial period." *Id.* (finding a one-year term of employment sufficient consideration).  In total, however, Jim Graca worked for

Intertek for more than 15 years, McMahon for more than 8 years, and Lisa Graca for more than 8 years.

Further, any argument that McMahon's 6 months of employment does not constitute a substantial period of employment fails because McMahon, along with Jim Graca, resigned. The facts of *SKF USA, Inc. v. Bjerkness* are illustrative. 636 F. Supp. 2d 696 (N.D. Ill. 2009). In *SKF*, the Former Intertek Employees asserted that their restrictive covenants lacked consideration because they were not employed for a substantial period of time after they signed the agreements. *Id.* at 709-10. Similar to here, the employees in *SKF* resigned from their employment. *Id.* In fact, one of the employees in *SKF* resigned three weeks after executing the agreement. *Id.* at 710. The court rejected the employees' arguments regarding inadequate consideration, holding that the employees' resignations did not "undermine the validity" of the agreement because "the short period of employment was the result of the defendants' resignations, not any action taken on the part of the [employer]." *Id.* Specifically, the court noted that the "[d]efendants declined to accept the full consideration that they were offered for signing the restrictive covenant—namely, continued employment for a reasonable length of time." *Id.* The court went on to emphasize that "[t]his cannot be considered a failure of consideration attributable to the employer" and nothing in the record suggested that the employer had any intention of forcing the employees to resign prior to the passing of a substantial period of time. *Id.*

As previously mentioned, Jim Graca and Melanie McMahon resigned from Intertek approximately 18 and 6 months after they signed the ECIA. As the court held in *SKF*, this short period of employment is the "result of the defendants' resignations, not any action taken on the

part of" Intertek. *Id.* Jim Graca and McMahon simply refused to accept the full consideration Intertek offered.

Further, it is important to note that all three employees had a long tenure with Intertek, which demonstrates that Intertek always requested renewal of the ECIA with the intention that the Former Intertek Employees would be employed for a substantial period of time. There is nothing in the record to the contrary, and Defendants' argument that the nonsolicitation covenant lacks adequate consideration is meritless.

**B.** **Intertek's Employee Nonsoliciation Restrictive Covenant Is Also Appropriately Tailored.**

Intertek's employee nonsolicitation restrictive covenant is also narrowly tailored. *See Lee/O'Keefer Ins. Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1006, 516 N.E.2d 1313, 1319 (Ill. App. 1st Dist. 1987) ("Whether the prohibitions of a restrictive covenant are unreasonably broad depends upon the facts of each case."). Illinois courts routinely enforce employee nonsolicitation covenants if the time limit is reasonable, trade secrets or confidential information are involved, and the restriction is necessary for the protection of a legitimate business interest. *See Integrated Genomics, Inc. v. Kyrpides*, No. 06-C-6706, 2010 WL 375672, at *10 (N.D. Ill. Jan. 26, 2010) (upholding the enforceability of an employee nonsolicitation provision because "***such a provision does not significantly restrain trade***. . . . [the former employee] is only prevented from contacting former coworkers to have them join him at his new employer; ***those former coworkers are not prevented from seeking a job with that employer***") (emphasis added)); *Malone v. Cort Furniture Corp.*, No. 02-C-1729, 2002 WL 1874819, at *1 (N.D. Ill. Aug. 13, 2002) (enforcing an employee nonsolicitation restrictive covenant that prohibited employee solicitation for 18 months and finding that the employer was entitled to a temporary restraining order because of the former employee's violations of the covenant); *Arpac Corp. v.*

*Murray*, 226 Ill. App. 3d 65, 76, 589 N.E.2d 640, 650 (Ill. App. 1st Dist. 1992) (enforcing an employee nonsolicitation covenant with a duration of two years with no geographic limit).

Further, to the extent that restrictive covenants are overly broad, Illinois case law allows for blue-penciling, even in the absence of a severability clause—a point which Defendants concede. *See Arpac*, 226 Ill. App. 3d at 80, 589 N.E.2d at 652. The fairness of the restraint initially imposed is a relevant consideration for the court to consider in deciding whether to modify the provision. *See id.* Here, Intertek's restrictive covenant is for one year only, which demonstrates initial fairness and weighs in favor of modification should any be necessary. Intertek continues to submit, however, that its employee nonsolicitation covenant is appropriately tailored and should be enforced in this case.

### III. The Former Intertek Employees' Actions Were Also In Clear Breach Of Their Fiduciary Duties

Resigning their flimsiest argument for near the end of their brief, Defendants attempt to cloak their breaches of fiduciary duties behind the argument that the Former Intertek Employees' competitive behavior was merely "preliminary" and therefore permissible. *See* Def.'s Resp. 20-21, ECF No. 45. Defendants' behavior was quite the opposite. Worse, even if the Former Intertek Employees' actions could be construed as "preliminary" (they cannot), their actions were not taken so *the Former Intertek Employees* could prepare to compete; they were indisputably taken to assist Intertek's *existing competitor*, AmSpec.

An employee is not allowed to engage in "preparatory" activities that are adverse to the interests of his employer. *See Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (finding that the employees conspired to create a "business plan . . . that would provide the same services as were already being provided by [the plaintiff-company]" and noting that the employees' actions in preparing to compete constituted breaches of their fiduciary duties);

13

*Regal-Beloit Corp. v. Drecoll*, 955 F. Supp. 849, 857-58 (N.D. Ill. 1996) (finding that the Former Intertek Employees' preparatory activities constituted breaches of their fiduciary duties).

These activities go beyond the bounds of mere "preparing to compete," because they constitute actual competition. *See Regal-Beloit*, 955 F. Supp. at 867; *see also Foodcomm*, 328 F.3d at 304. Here, the Former Intertek Employees engaged in activities similar to those that courts have held to be adverse competition to the interests of the employer, therefore constituting a breach of fiduciary duties. *See, e.g.*, *ABC Trans Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683, 379 N.E.2d 1228, 1237 (Ill. App. 1st Dist. 1978) (noting that employees are not permitted to engage in solicitation of fellow coworkers for participation in the "planned" competitive venture).

Further, an employee can "prepare to compete" only if doing so does not interfere with the employee's loyalty to his employer. *ABC Trans*, 62 Ill. App. 3d at 683, 379 N.E.2d at 1237. Accordingly, an employee can only engage in planning activities on his own time, and cannot use his employer's resources to support these activities. *See id; see also Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 369, 643 N.E.2d 1206, 1217 (Ill. App. 1st Dist. 1994).

Here, the Former Intertek Employees used Intertek's computers, telephones, and time, not to "prepare to compete," but to actually assist AmSpec in its competition with Intertek. It is axiomatic that the Former Intertek Employees could not have been serving Intertek's interests when they were using Intertek's resources to assist AmSpec—a proposition supported by case law across the board. *See Montel Aetnastak, Inc. v. Miessen*, 13 C 3801, 2014 WL 702322, at *21 (N.D. Ill. Jan. 28, 2014) (rejecting motion to dismiss breach of fiduciary duty claim against former employee *who acted in concert with existing competitors* of former employer-plaintiff); *see also Alexander & Alexander v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp. 1408,

1413-14 (D. Or. 1991) (finding that plaintiff stated a claim for breach of fiduciary duty where employees used company computers to draft business plan for competing venture); *Preferred Meal Sys. v. Guse,* 199 Ill. App. 3d 710, 725, 557 N.E.2d 506, 515 (Ill. App. 1st Dist. 1990) (finding employees breached their fiduciary duties by using their employer's computers to prepare business plan for rival enterprise they were organizing); *Doubleclick Inc. v. Henderson,* No. 116914/97, 1997 WL 731413, at *6 (N.Y. Sup. Ct. Nov. 5, 1997) ("While an employee may secretly incorporate a competitive business prior to his departure, he must not 'use his principal's time, facilities or proprietary secrets, to build the competing business.'"); *Long v. Vertical Techs., Inc.,* 113 N.C. App. 598, 604, 439 S.E.2d 797, 801-02 (N.C. Ct. App. 1994) (finding that the employees' use of the employer's resources, including employees, facilities, computers, and computer programs to advance a competitor's business was a breach of fiduciary duty).

As demonstrated herein and further explained in previous submissions to the Court,[7] Defendants' actions breached their fiduciary duties owed to Intertek and serve as a proper basis for injunctive relief. *See Crown Packaging Int'l, Inc. v. Brown*, No. 1-14-0284, 2014 WL 3585710, at *5-6 (Ill. App. 1st Dist. July 21, 2014) (finding sufficient evidence that the former employee breached his fiduciary duty to warrant injunctive relief, separate and apart from the breach of contract claim). Here, the Former Interek Employees were not preparing to compete by planning their own venture; instead, they actively assisted Intertek's main rival, AmSpec, in actually competing with Intertek for 10 months while at the same time collecting a paycheck from Intertek.

## IV.  The Doctrine of Inevitable Disclosure Is Applicable In This Case.

Last, Defendants request the Court to reject any application of the inevitable disclosure doctrine because the Former Intertek Employees were not high-level executives who had any

---

[7] *See* Pl.'s Mem. in Supp. of TRO 31-33, ECF 4; Pl.'s Mem. in Supp. of Prelim. Inj. 23-24, ECF 48.

specialized knowledge. *See* Def.'s Resp. 23-24, ECF No. 45. The inevitable disclosure rule, however, is not limited to high-level executives or those with knowledge of a top-secret formula. The cases cited at Pages 19 through 20 of Plaintiff's Memorandum in Support of a Preliminary Injunction dispel that notion. *See* ECF 45. In particular, in *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, the rule was applied to a "sales representative." 420 F. Supp. 2d 866, 869 (N.D. Ill. 2006); *see also RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 863 (N.D. Ill. 2001) (applying the inevitable disclosure doctrine to a salesperson).

Further, Intertek is not claiming that the Former Intertek Employees be enjoined from using their general knowledge. Instead, Intertek has demonstrated that the Former Intertek Employees already have disclosed Intertek's trade secrets to AmSpec, and Intertek is only requesting that the Former Intertek Employees be prohibited from future disclosures, which their work at AmSpec will inevitably lead them to do. *See* Pl.'s Mem. in Supp. of Prelim. Inj. 11-15, ECF 48; *see also PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) ("It is not the general skills and knowledge acquired during his tenure with [plaintiff-company] that the [plaintiff] seeks to keep from falling into the [competitor's] hands, but rather the particularized plans or processes developed by [plaintiff] and disclosed to him while the employer-employee relationship existed, which are unknown to others in the industry and which given the employer an advantage over his competitors.").

## CONCLUSION

For these reasons, Intertek requests that the Court grant the relief requested in Intertek's Motion for a Preliminary Injunction, specifically entering a preliminary injunction as requested therein.

Date:    September 2, 2014.

Respectfully submitted,

Intertek USA, Inc.

By:    _____*/s/ Jonathan M. Cyrluk*_____
         One of its Attorneys

CARPENTER LIPPS & LELAND LLP
Jonathan M. Cyrluk (ARDC #6210250)
*cyrluk@carpenterlipps.com*
Josh Goldberg (ARDC #6277541)
*goldberg@carpenterlipps.com*
180 North LaSalle Street, Suite 2640
Chicago, IL 60601
Telephone:    (312) 777-4300

FULBRIGHT & JAWORSKI LLP
M. Carter Crow
Texas State Bar No. 05156500
*carter.crow@nortonrosefulbright.com*
Andrew P. Price
Texas State Bar No. 24002791
*andrew.price@nortonrosefulbright.com*
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:    (713) 651-5151

**CERTIFICATE OF SERVICE**

I, Jonathan Cyrluk, hereby certify that the forgoing ***Reply Memorandum in Support of Its Motion for a Preliminary Injunction*** was filed electronically on all parties of record via the Court's CM/ECF system on September 2, 2014.


_____*/s/ Jonathan M. Cyrluk*_____
JONATHAN M. CYRLUK